**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**LONDON**

**CRIMINAL ACTION NO. 6:26-CR-60-REW-HAI**

**UNITED STATES OF AMERICA** **PLAINTIFF**

**V.**

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**

**TERRY WESTON ROGERS** **DEFENDANT**

* * * * *

Comes now the United States, through undersigned counsel, and responds in opposition to the Defendant's motion to suppress. [R. 26]. In his motion, Defendant Terry Weston Rogers moves to suppress evidence obtained from his Samsung cellphone during the execution of a state search warrant. [*Id.*]. Specifically, Rogers seeks to suppress evidence of sexually explicit images of minors that were discovered by law enforcement on that phone. As grounds, Rogers claims, among other things, that the warrant affidavit is overly broad, fails to establish probable cause, and offers no reason to believe that images would be evidence of the offense under investigation. [See *Id.*]. For the foregoing reasons, the United States respectfully asks the Court to deny the Defendant's motion.

## FACTS

On February 10, 2026, Officer Amanda Moore with the Pikeville Police Department received a harassing communications report from a Tennessee resident, Sara Gooch. Gooch alleged that early on the same morning she had received a harassing telephone call from a

blocked number that she was later able to identify as a phone number that belonged to Terry Rogers. Gooch stated that the call lasted approximately two minutes and that the caller knew Gooch's first and last name. When asked by Gooch what the caller wanted, he ended the call. Gooch works as a realtor, and by virtue of that role, she has access to a mobile application that can be used to identify phone numbers. Using that application, Gooch identified the call as having come from a number associated with Rogers.

Gooch provided the call information to Pikeville Police who began an investigation. Officer Moore first located a citation issued by Kentucky State Police involving Rogers and a similar complaint from December 29, 2025. In that report, Rogers was alleged to have contacted a different realtor, this time from Washington state, and made threats to kill that realtor's family. When confronted by police at the time of the first investigation, Rogers stated, "that he was extremely intoxicated and remembers calling the female," and that he, "remembered the conversation being in a playful, perverted manner." [*See* Exhibit 1 – Search Warrant and Affidavit]. Police were able to determine that certain similarities existed between the two called parties, including that they were both realtors with law enforcement spouses. Police also independently verified that the number that Gooch had identified was, in fact, registered to Rogers.

On February 25, 2026, Officer Moore and others made contact with Rogers at his home in Pikeville. Regarding the calls, in a non-custodial interview, Rogers stated, "I don't know," and "I'm not admitting to anything, but it's weird." [*Id*.]. At that time, police seized Rogers' phone. On that same date, Officer Moore submitted an affidavit for and was granted a warrant to search Rogers' Samsung cellphone.

Also on February 25, 2026, at approximately 2 P.M., Digital Forensic Analyst (DFA) Zach Hall was informed that he would be tasked with performing an extraction of Rogers' phone, pending issuance of a search warrant. Approximately two hours later on the same day, DFA Hall received the search warrant and began the extraction process. On the following day, February 26, 2026, DFA Hall's forensic tool completed the extraction of Rogers' phone. While reviewing the data from Rogers' phone authorized by the search warrant, Hall noticed the call logs between April 2025 through February 2026 were missing. Using his training and knowledge of cellular phones, DFA Hall then went to the media section of the extraction to see if he could find images and files of the missing calls that the phone would automatically record in the background and cache in that section of the extraction. While in the media folder of the extractions, DFA Hall located child sex abuse material. [*See* Exhibit 2 – Hall Statement.]

On April 23, 2026, a federal grand jury issued an Indictment charging Rogers with one count of possession of child pornography.

## STANDARD

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

It is well-settled that police may "seize an item based on probable cause in order to secure a search warrant for it." *United States v. Repress*, 9F.3d 483, 486 (6th Cir. 1993). In

order to establish probable cause justifying a search warrant, there must be a nexus between the place to be searched and the evidence sought. *United States v. Crawford*, 943 F.3d 297, 308 (6th Cir. 2019) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)). "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016) (internal quotations omitted). "The job of a magistrate judge presented with a search warrant application is 'simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Brown*, 828 F.3d at 381 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Probable cause "is not a high bar," *United States v. Helton*, 35 F.4th 511, 517 (6th Cir. 2022) (citing *D.C. v. Wesby*, 588 U.S. 48, 58 (2018), as it "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity," *Id*. (quoting *Illinois v. Gates*, 462 U.S. 213, 243–44 n.13 (1983)).

In determining whether or not an affidavit establishes probable cause, the analysis is confined to the four corners of the affidavit. *Abernathy*, 843 F.3d at 249 (citing *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010); *United States v. Pinson*, 321 F.3d 558, 565 (6th Cir. 2003)). In determining whether or not an affidavit is sufficient, the courts "look holistically at what the affidavit does show, instead of focusing on what the affidavit does not contain, or the flaws of each individual component of the affidavit." *United States v. Christian*, 925 F.3d 305, 312 (6th Cir. 2019). Moreover, a search for illegal drugs only needs to show "'a fair probability' that the drugs will be found in a particular place."

*Abernathy*, 843 F.3d at 249; *see also United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008) ("Probable cause exists where there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place."). After-the-fact scrutiny of an affidavit should not take the form of *de novo* review, rather, the Court must give the determination of the magistrate who issued the warrant "great deference." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000); *see also United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003). The question is merely whether the magistrate had a "substantial basis" for finding that the underlying affidavit provided probable cause. *Id*.

"When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure." *Illinois v. Krull*, 480 U.S. 340, 347 (1987). Courts should not, however, suppress "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 922 (1984). "The good-faith standard is 'less demanding' than the 'threshold required to prove the existence of probable cause.'" *United States v. Powell*, 603 F. App'x 475, 477 (6th Cir.), *cert. denied*, 136 S. Ct. 107, 193 L. Ed. 2d 87 (2015) (citing *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004) (en banc)). "Thus, the good-faith exception applies where 'the affidavit contain[s] a minimally sufficient nexus between the illegal activity and the place to be searched to support an officer's good-faith belief in the warrant's validity.'" *Id.* at 477 (citations omitted); *see also United States v. Laughton*, 409 F.3d 744, 750 (6th Cir. 2005) (which suggests that the good-faith exception applies when the affidavit provides

"some connection, regardless of how remote it may have been, between the criminal activity at issue and the place to be searched"). "[S]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005) (citations omitted).

## ARGUMENT

The Defendant seeks suppression of all of the evidence obtained from the forensic examination of his cellular phone based on a list of grounds, but principally on three assertions: that the warrant lacked probable cause to search for child pornography, that the warrant was impermissibly broad and lacked a temporal limitation, and that the forensic examination exceeded the warrant's scope. [R. 26]. These assertions are a fundamental mischaracterization of both the warrant and the manner in which it was executed. Contrary to the Defendant's assertion, the warrant at issue was not overly broad and authorized the search of a specifically identified cell phone for digital evidence associated with the investigation into Rogers' alleged harassing communications, including: communications, accounts, phone logs, location information, images, and other electronically stored information. [*See* Exhibit 1 – Search warrant and affidavit].

From the outset, the search of Rogers' device was focused on uncovering evidence of the harassing communications. Contrary to Rogers' argument, and given the nature of the alleged conduct, a search related to the harassing communications investigation of images contained on the phone was very likely to have produced evidence of that crime. Screenshots of phone calls, phone numbers, and even the advertisements or websites of the

realtors in question could all have been reasonably located in the images of the device and would all be valid evidence of the alleged offense. DFA Hall's statement further establishes that the examination was initially directed toward the very evidence the warrant authorized. His subsequent discovery of the illicit images was legally permissible and the Defendant's motion should be denied. Simply put, this case involved a valid warrant to search for evidence of harassing communications that ultimately resulted in the discovery of child pornography.

I. *The temporary seizure of the phone pending a warrant was lawful.*

As an initial matter, the Government addresses the initial seizure of the phone. The Defendant challenges the seizure of his phone on February 25, 2026, before the search warrant had issued. [R. 26 at p. 8] Law enforcement encountered Rogers at approximately 1:54 p.m. on February 25th and the warrant was obtained approximately ninety-six minutes later. It is well settled that police may "seize an item based on probable cause in order to secure a search warrant for it." *United States v. Repress*, 9 F.3d 483, 486 (6th Cir. 1993). The Sixth circuit has recognized that the temporary seizure of a device while officers pursue judicial authorization must be evaluated in light of the possessory and evidentiary interests involved. *United States v. Sykes*, 65 F. 4th 867, 877-78 (6th Cir. 2023). Courts and cases, as is typical of Fourth Amendment reasonableness analysis, examine a variety of factors and the totality of the circumstances. Though the Defendant does not raise the commonly raised issue of delay in this case, the factors in determining reasonableness of a delay are instructive here. These factors include: (1) the length of delay; (2) the diligence

of investigators; (3) the significance of the defendant's possessory interest; and (4) the significance of the Government's interest in retention. *Sykes*, 65 F.4th at 878.

Rogers does not contend that law enforcement lacked probable cause to seize the phone, instead asserting simply that the seizure was unlawful. [R. 26 at p. 8]. In this instance, officers did possess the requisite probable cause to believe that a crime had occurred, and that evidence of that crime would be found on the device in question. At that point, police knew that a harassing call to Gooch had occurred from a number belonging to Rogers, and that, by his own admission, a similar call had occurred once before.

Seizure of the phone was also the reasonable course of action under the circumstances. Following the conversation with Rogers, the retention interest by the Government in the phone was at its apex. Digital evidence is easily destroyed or concealed, and seizing the phone was a reasonable step to prevent that from happening since Rogers was on notice of the investigation at that point. Unquestionably, law enforcement acted with diligence after the seizure. Seizure of the phone, procurement of the search warrant, and the initiation of the extraction all took place on the same day. Therefore, it follows that the delay between seizure and search was negligible. Given the totality of the circumstances, seizure of the phone and process that followed was lawful. See *Sykes*, 65 F.4th at 878.

II. *The warrant established probable cause to search Rogers' phone for evidence of harassing communications and the items sought were sufficiently particularized.*

Rogers first asserts that the warrant affidavit failed to establish probable cause to search for images on his device. [R. 26 at p. 5]. Similarly, Rogers asserts that the warrant was overbroad and lacks the particularity required under the Fourth Amendment. [*Id.*]. The probable cause inquiry, however, is governed by practicality and common sense. See *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016) (internal quotations omitted). It is not a high bar. *United States v. Helton*, 35 F.4th 511, 517 (6th Cir. 2022). Further, the particularity requirement varies based on the type of case. *United States v. Hanna*, 661 F.3d 271, 286 (6th Cir. 2011).

Rogers relies on the Sixth Circuit's decision in *United States v. Hodson*, 543 F.3d 286, 292 (6th Cir. 2008) to assert that, here, police effectively established probable cause to search for evidence of one crime, but sought a warrant designed to search for another. That is not the case. The warrant obtained by police in this case, in summary, sought seven (7) specific categories of evidence: (1) information regarding the telephone number associated with the phone and other service provider information; (2) evidence of accounts associated with the device, including email addresses, social media accounts, etc.; (3) evidence of the use of the device to communicate with others, including calls, chats, messages, app communications, social media, etc.; (4) information that can be used to calculate location, such as GPS data, as well as media; (5) evidence of the identity of the owner of the device, including digital communications, photos, videos, and associated data; (6) evidence of the attachment to other devices; and (7) evidence of counter forensic

programs. [*See* Exhibit 1 – Search Warrant and Affidavit]. Each of those categories is tied to both the communications detailed in the affidavit and to Rogers.

In fact, the affidavit established a substantial nexus between Rogers, the information sought from the phone, and the alleged harassing communications. It described in detail the February 10, 2026, call to Gooch, her subsequent identification of the caller, and Pikeville Police's confirmation of ownership of that phone number. It further detailed the December incident involving another realtor and Rogers' confirmatory statements about that call. Rogers' reliance on *United States v. Hodson*, 543 F.3d 286 (6th Cir. 2008), is misplaced. In *Hodson*, the issued search warrant authorized a search for child pornography even though the affidavit established probable cause for child molestation. *Id*. at 292-93. The Rogers' warrant is materially different. The affidavit here established probable cause regarding the communications investigation, and the warrant sought evidence of communications and digital activity tied to that investigation.

Search warrants must describe with particularity any "things to be seized." U.S. Const. amend. IV. But "the degree of specificity required is flexible and will vary depending on the crime involved and the types of items sought." *United States v. Hanna*, 661 F.3d 271, 286 (6th Cir. 2011). The enumerated categories sought in the Rogers' warrant were all specific and could reasonably be used to tie the phone to the investigated actions or tie the phone to Rogers. Though images and videos may not directly relate to calls or communications, in a modern digital world, photographs and other media (such as screenshots) can be particularly useful in determining identity and may still be tied in some indirect way to the communications at issue. The description of items to be seized should

"be specific as the circumstances and the nature of the activity under investigation permit." *United States v. Richards*, 659 F.3d 527, 537 (6th Cir. 2001). Here the items sought were either directly related to communications, could reasonably produce evidence of the communications, or could show that Rogers owned and used the phone.

Courts often reject "particularity challenges to warrants authorizing the seizure and search of entire personal or business computers." *Richards*, 659 F.3d at 539-40. Criminals frequently conceal their activity by hiding or mislabeling files, so broad searches are often required to find evidence of a crime on a computer. *United States v. Bass*, 785 F.3d 1043, 1049 (6th Cir. 2015). Cell phones are treated similarly, as modern cell phones provide the same functionality as computers. See *Riley v. California*, 573 U.S. 373, 393 (2014). Simply put, this was not a case in which police were "rummaging" through the digital private life of Rogers, as he asserts. This was a narrowly targeted search for evidence of the offense described in the warrant affidavit.

III. *The warrant and incorporated affidavit provide sufficient restrictions.*

Rogers asserts that the warrant fails to restrict the search of the phone by offense or by time. [R. 26 at p. 6]. This proposition ignores established Sixth Circuit precedent, however. Although it is true that the text of the warrant did not contain a temporal restriction, "the particularity requirement may be satisfied through the express incorporation or cross-referencing of a supporting affidavit that describes the items to be seized, even though the search warrant contains no such description." *United States v. Richards*, 659 F.3d 527, 537 (6th Cir. 2011). The warrant undoubtedly contains sloppy draftsmanship, particularly in paragraph 4 which allows a search for "images created,

accessed, or modified between the above listed dates, together with their metadata and EXIF tags." [Exhibit 1 – Search Warrant and Affidavit]. That paragraph makes reference to a date range that is not present in the warrant itself. That does not render the warrant temporally unlimited though.

The warrant expressly provides that the probable cause supporting its issuance is "set out in the affidavit attached hereto and made a part hereof as if fully forth herein." [*Id*.]. The Sixth Circuit has held that substantially identical incorporation language permits the supporting affidavit to be considered as part of the warrant itself for purposes of satisfying the Fourth Amendment's particularity requirement. *United States v. Raglin*, 663 F.App'x 409, 413 (6th Cir. 2016). Here, the incorporated affidavit identifies two specific communications that form the basis for the investigation: the December 29, 2025 call involving the Washington realtor and the February 10, 2026 call to Sara Gooch. Those dates are not incidental, rather they define the communications forming the basis for probable cause as outlined in the affidavit and provide the temporal context in which the warrant's evidentiary categories must be understood. The warrant can reasonably be read to reference the "above listed dates" as the dates set forth in the incorporated affidavit.

This interpretation should not require treating December 29th and February 10th as the only two calendar dates on which responsive evidence could exist. Digital evidence associated with a particular communication may necessarily predate or postdate the communication itself. For example, account information, contact data, metadata, cached material, or other user-attribution evidence may be created before or after either of the specifically described communications. Those pieces of evidence nevertheless tend to

establish who uses a device, what account was involved, or the method by which communication occurred. The temporal limitation supplies context and limits the investigation without restricting the examiner artificially to two calendar dates. The warrant contains multiple valid evidentiary categories that are not themselves limited to files created on those dates.

What this case is not, however, is one in which officers received a completely temporally unlimited warrant. Likewise, the failure to spell out the specific offense being investigated should not deem the warrant invalid. The Fourth Amendment requires only that the warrant "particularly describe the place to be searched and the persons or things to be seized." U.S. Const. amend. IV. "Neither the Fourth Amendment nor our holdings require particularity with respect to the criminal activity suspected." *United States v. Horn*, 187 F.3d 781, 787 (8th Cir. 1999). Here, because the warrant expressly incorporates the affidavit and the warrant was sufficiently limited to the criminal investigation described in the affidavit, the warrant is sufficiently particularized. The affidavit provides a wealth of information about the investigation Pikeville Police undertook that supported probable cause, including the circumstances and content of the two calls to two separate realtors alleged to have been made by Rogers, Rogers' admissions, and the identification of the phone number. [Exhibit 1 – Search Warrant and Affidavit]. These facts tend to show Rogers was engaged in making harassing communications. The warrant also identifies the categories of digital evidence officers were authorized to review and describes with particularity the place those items were likely to be found. Taken together, the warrant and affidavit are not an unrestricted authorization to search for evidence of *any* crime, but are

instead a narrow authorization to search for specific evidence of the criminal activity described. The relevant inquiry is not whether the warrant enumerates the specific statute violated, but rather, when read as a whole, does the warrant sufficiently constrain the search? See *United States v. Castro*, 881 F.3d 961, 965-66 (6th Cir. 2018). Here it plainly does.

IV. *If the warrant is overbroad, the remedy is not to wholesale suppression.*

The position of the Government is that the warrant at issue was supported by probable cause and that, read with its affidavit, was sufficiently particular. Should the Court find, however, that parts of the warrant are overbroad, the appropriate remedy is not suppression of all evidence obtained from the phone. Sixth Circuit precedent expressly rejects that all-or-nothing approach. "Infirmity due to overbreadth does not doom the entire warrant; rather, it requires the suppression of evidence seized pursuant to that part of the warrant . . . but does not require the suppression of anything described in the valid portions." *United States v. Hanna*, 661 F.3d 271, 286-87 (6th Cir. 2011); see also *United States v. Greene*, 250 F.3d 471, 477 (6th Cir. 2001). That rule lends itself particularly well to this case, as the warrant at issue contains several discrete categories of evidence. The warrant separately authorizes the examination of telephone and application-based communications and evidence bearing on the user's identity including photos and videos, among other categories of information. These categories specifically are tied to the communications investigation described in the incorporated affidavit.

Accordingly, even if the Court were to conclude that the warrant's authorization concerning images, location data, or another discrete category were broader than the Fourth

Amendment permits, that conclusion would not invalidate the portions of the warrant authorizing the search for communications and evidence identifying the user of the device. The Court could simply sever the inform portions, "from the remainder which passes constitutional muster." *United States v. Abboud*, 438 F.3d 554, 576 (6th Cir. 2006). Here the Court could easily sever portions related to the location data while leaving intact the portion related to the identity of the owner or user of the phone, a material fact directly at issue in the investigation described in the warrant affidavit. Notably, the portion of the warrant that allows the police to search for owner/user information would have also led to the discovery of the illicit images in this case.

The Sixth Circuit has applied this principle specifically in the context of digital and cell phone searches. See *United States v. Rarick*, 636 F.App'x 911, 914-16 (6th Cir. 2016). In *Rarick*, the court addressed a challenge to expansive language authorizing the search of electronic data and communications and recognized that an overbroad portion of a warrant may be severed from those that satisfy the particularity requirement. See *Id.* Should the Court here find the warrant overbroad, that same approach is appropriate.

V. *The discovery of the images occurred during the lawful execution of the warrant.*

The Defendant's motion seems to characterize the child pornography images as if they were discovered solely because of the allegedly overbroad "images" portion of the search warrant. Not so. The relevant question is not simply whether the warrant could have been drafted more narrowly, but whether the evidence challenged was seized pursuant to a constitutionally infirm portion of the warrant. See *Hanna*, 661 F.3d at 287. The Government maintains that the warrant, properly construed, authorized the examination of

all of the identified categories of digital evidence in connection with the investigation afoot. Importantly, however, Digital Forensic Analyst Hall's discovery of the first images of child pornography occurred when he was searching for evidence contained in paragraph 3 of the warrant, involving evidence of the use of the phone to communicate with other individuals. [Exhibit 2 – Hall Statement]. Notably, the Defendant himself seemingly concedes in his motion that the offense under investigation was provable primarily using the category of evidence contained in paragraph 3 of the warrant. [*See* R. 26 at p. 6].

The forensic examination in this case was directed squarely toward the investigation of the harassing communications. DFA Hall explained that after the extraction revealed that call-log information for the relevant period was missing, he relied on his training to look in the media portion of the extraction. [Exhibit 2 – Hall Statement]. Smartphones, like the Defendant's, cache data—such as call data—while a user is using the device in order to make the device run faster and more efficiently. This cached data is often stored in the phone's media. DFA Hall would testify at an evidentiary hearing that his training and experience led him to look in the media folder for the missing call log information. While there, he found the call log information intermixed with images of child pornography. Thus, the discovery of the child pornography did not result from an independent search for evidence of child pornography or from an exploratory search unrelated to the warrant.

a. <u>Plain View</u>

DFA Hall's discovery of the images is subject to the plain-view principle. An officer may seize evidence in plain view when the officer is lawfully present, has a right of access to the place from which the item is observed, and the item's incriminating character is

immediately apparent. *Horton v. California*, 496 U.S. 128, 136-37 (1990); *United States v. Loines*, 56 F.4th 1099, 1106 (6th Cir. 2023). Here, at least the initial discovery of images by DFA Hall meets those criteria. First, DFA Hall was lawfully present within Rogers' phone subject to a search warrant. Second, he had the right of access to the place from which the item was observed. Here, that was Hall accessing the specific place where he knew he could find evidence of the deleted call logs, the media section of the phone extraction. And finally, the incriminating nature of the images was readily apparent.

Courts have looked to a set of instructive factors to determine if the incriminating nature of a particular item is "immediately apparent". *Loines*, 56 F.4th at 1108. The most instructive of the factors for this case is, "whether the officer can recognize the incriminating nature of an object as a result of his immediate or instantaneous sensory perception." *Id.*; quoting *United States v. Garcia*, 496 F.3d 495, 510-11 (6th Cir. 2007). Perhaps no incriminating evidence exists that is more immediately apparent than the images found on Rogers' phone, which depict prepubescent children engaged in sex acts.

For the initial images of child pornography discovered by Hall, the plain view doctrine applies and that evidence should not be suppressed. The Sixth Circuit has upheld similar scenarios with digital searches. In *United States v. Lucas*, 640 F.3d 168, 179-80 (6th Cir. 2011), the Court recognized that when officers are conducting a lawful computer search for evidence of an offense and inadvertently encounter evidence of another offense, the latter evidence may be seized under the plain-view doctrine. Assuming, *arguendo*, that the warrant's authorization itself did not extend to the images at issue, the Fourth

Amendment does not require suppression of the images as they were lawfully seized in plain view.

Undoubtedly, the best course of action at the point the images were first discovered would have been to stop searching and obtain a second search warrant. That did not occur. The Government recognizes that the plain view doctrine does not authorize an officer who has discovered one piece of contraband to undertake an otherwise unauthorized search for additional contraband. See *United States v. Lewis*, 81 F.4th 640, 646-48 (6th Cir. 2023). But that principle does not require suppression of evidence already encountered during a lawful search, nor does it transform the lawful search that preceded the discovery into an unlawful one. At most, it raises a question concerning the scope of any examination that occurred after the first few images were encountered. Nevertheless, it remains the position of the United States that all of the discovered illicit images would have been discovered subject to the valid search warrant.

VI. *The good faith exception provides for the admission of all evidence obtained during the search of Rogers' phone.*

Finally, should the Court find that the warrant to search the contents of Rogers' phone was invalid, the *Leon* good faith exception allows the admission of all evidence seized in reliance on the warrant. See *United States v. Evers*, 669 F.3d 645, 654 (6th Cir. 2012) (citing *United States v. Paul*, 551 F.3d 516, 523 (6th Cir. 2009); *United States v. Leon*, 468 U.S. 897, 905 (1984)). *Leon* established that only in the following exceptional circumstances is law enforcement to disregard a magistrate judge's authorization: (1) when the affidavit contains information the affiant knew or should have known to be false; (2)

when the issuing magistrate lacked neutrality and detachment; (3) when the affidavit is devoid of information that would support a probable cause determination making any belief that probable cause exists completely unreasonable; or (4) when the warrant is facially deficient. *Leon*, 468 U.S. at 921-22.

Here, there is no evidence that the warrant at issue was based on information the officer knew to be false, or that the issuing magistrate lacked neutrality. Moreover, the warrant was not facially deficient. Rogers argues that the warrant is so devoid of information that would support probable cause that reliance on it was unreasonable [R. 26 at p. 7-8]. The content of the warrant does not support this claim. As discussed in detail above, the warrant provided a fulsome recitation of facts supporting probable cause and reliance on it was reasonable.

If evidence is obtained in objectively reasonable reliance on a subsequently invalidated search warrant, it should not be suppressed. *United States v. Brown*, 828 F.3d 375, 385 (6th Cir. 2016). Further, the Supreme Court in *United States v. Davis* stated that, since the inception of the good faith exception, it had never applied the exclusionary rule "as a result of nonculpable, innocent police conduct." *United States v. Davis*, 564 U.S. 229, 241 (2011). Courts are further clear that suppression is only appropriate when police misconduct is "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring v. United States*, 555 U.S. 135, 144 (2009). While the warrant is not perfect, there is no evidence of deliberate or even grossly negligent conduct on the part of police in this case. The search at issue in this case is exactly the type of reasonable reliance on a warrant

issued by a detached magistrate that the *Leon* court envisioned when carving out the good faith exception. Where an officer's reliance on a warrant is objectively reasonable, the Supreme Court held, no additional deterrent effect will be achieved through the exclusion from evidence of the fruits of that search. 468 U.S. 897, 922.

## CONCLUSION

The temporary seizure of the Defendant's phone was reasonable. Further, the warrant, read together with its incorporated affidavit, established probable cause and satisfied the particularity requirement. Moreover, any overbreadth would only require severance, not suppression. Should the Court find that the warrant was overbroad, the images were still discovered in plain view during a search under valid portions of the warrant. Should the Court find the warrant invalid, the good-faith exception undoubtedly precludes suppression obtained through objectively reasonable reliance on the warrant. For these reasons, the Court should deny the Defendant's motion. [R. 26].

To the extent that a hearing is necessary regarding the execution of the forensic examination, the United States does not oppose the Defendant's request for an evidentiary hearing. The United States opposes the request for a hearing on the facial warrant issues, as those are legal issues that can be decided from the record.

Respectfully submitted,

JASON D. PARMAN
UNITED STATES ATTORNEY

By: /s/ *Justin E. Blankenship*
Assistant United States Attorney
601 Meyers Baker Rd. Suite 200
London, KY 40741
(606) 330-4829
Justin.Blankenship2@usdoj.gov

**CERTIFICATE OF SERVICE**

On September 4, 2026, I electronically filed this document through the CM/ECF system which will send notice to counsel of record.

/s/ *Justin E. Blankenship*
Assistant United States Attorney